# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2001 NOV 19 P 4: 34

SIGN_____
BY DEPUTY CLERK

FRANCES UNGER, Individually and On Behalf of
All Others Similarly Situated,

        Plaintiff,

  v.

AMEDISYS, INC., WILLIAM F. BORNE,
LARRY GRAHAM and JOHN M. JOFFRION,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 01-CV-703
Judge James J. Brady

# PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

G:\Docs\AMEDISYS, INC\Class Cert Memo.wpd

| INITIALS | DOCKET# |
|---|---|
| NmL | 19 |

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.  THE PROPOSED CLASS ACTION SATISFIES RULE 23 . . . . . . . . . . . . . . 9

        1.  The Standards Of Review On A Motion For Class Certification . . . . . . . 9

        2.  The Class Is So Numerous That
Joinder Of All Members Is Impracticable . . . . . . . . . . . . . . . . . . . . . . . . 9

        3.  Common Questions Of Law And Fact Exist . . . . . . . . . . . . . . . . . . . . . 11

        4.  Plaintiffs' Claims Are
Of Those Of The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        5.  Plaintiffs Will Fairly And Adequately
Protect The Interests Of The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    B.  PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B)(3) . . . . . 15

        1.  Common Questions Of Law And Fact Predominate . . . . . . . . . . . . . . . 15

        2.  A Class Action Is Superior To
Available Methods Of Adjudication . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

**Page(s)**

Amchem Products, Inc., v. Windsor,
    521 U.S. 591,117 S. Ct. 2231 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Affiliated Ute Citizens v. United States,
    406 U.S. 128 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Basic Inc. v. Levinson,
    485 U.S. 224 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Berger etc. et al. v. Compaq Computer Corp, et al.,
    257 F.2d 475, 483 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Blackie v. Barrack,
    524 F.2d 891 (9th Cir. 1975) cert. denied 429 U.S. 816 (1976). . . . . . . . . . . . . . . . . . . 16

Boykin v. Georgia-Pacific Corp.,
    706 F.2d 1384 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Califano v. Yamasaki,
    442 U.S. 682 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cary v. Greyhound Bus Co.,
    500 F.2d 1372 (5th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Dura-Bilt Corp. v. Chase Manhattan Corp.,
    89 F.R.D. 87 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

Durrett v. John Deere Co.,
    150 F.R.D. 555 (N.D. Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Feinberg v. Hibernia Corp.,
    1992 U.S. Dist. LEXIS 10872 (E.D. Lou. July 14, 1992) . . . . . . . . . . . . . . . . . . . . . . . . 15

Fine v. American Solar King Corp.,
    919 F.2d 290 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Forbush v. J.C. Penny Co.,
    994 F.2d 1101, 1106 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Greenwald v. Integrated Energy, Inc.,
    102 F.R.D. 65 (S.D. Tex. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Herbst v. International Tel. & Tel. Corp.,
    495 F.2d 1308 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re AmeriFirst Sec. Litig.,
    139 F.R.D. 423 (S.D. Fla. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Corrugated Container Antitrust Litig.,
    643 F.2d 195 (5th Cir. 1981), cert. denied, 456 U.S. 998 (1982) ................. 14

In re First Republicbank Secs.,
    [1989 Transfer Binder] Fed. Sec. L. Rep. (CCH)
    ¶ 94, 554 (N.D. Tex. Aug.1, 1989) ............................... 13, 14, 16, 17

In re Gulf Oil/Cities Serv. Tender Offer Litig.,
    112 F.R.D. 383 (S.D.N.Y. 1986) .......................................... 17

Jenkins v. Raymark Indus., Inc.,
    782 F. 2d 468 (5th Cir. 1986) ........................................... 11

Kalodner v. Michaels Stores, Inc.,
    172 F.R.D. 200 (N.D.Tex. 1997) ......................................... 13

Keasler v. Natural Gas Pipeline Co.,
    84 F.R.D. 364 (E.D. Tex. 1979) ........................................... 9

Krogman et al. v. Sterritt et al.,
    202 F.R.D. 467 (N.D. Tex. 2001) ........................................ 13

Mersay v. First Republic Corp.,
    43 F.R.D. 465 (S.D.N.Y. 1968) .......................................... 17

Mertz v. Harris,
    497 F. Supp. 1134 (S.D. Tex. 1980) ...................................... 11

Miller v. Mackey Int'l Inc.,
    452 F. 2d 424 (5th Cir. 1971) ............................................ 9

Mullen v. Treasure Chest Casino, LLC et al,
    186 F.3d 620, 626-27 (5th Cir. 1999) .................................... 15

Newberg On Class Actions, H. Newberg and A. Conte
    § 3.05 (3rd ed. 1992) .................................................... 10

Philips v. Joint Legislative Committee on Performance & Expenditure Review,
    637 F.2d 1014 (5th Cir. 1981) ........................................ 10, 12

Republic Nat'l Bank v. Denton & Anderson Co.,
    68 F.R.D. 208 (N.D. Tex. 1975) ........................................... 9

Shipes v. Trinity Indus.,
    987 F.2d 311 (5th Cir. 1993) cert. denied, 510 U.S. 991 (1993) ................. 12

Stewart v. Winter,
    669 F.2d 328 (5th Cir. 1982) ............................................ 11

Zeidman v. J. Ray McDermott & Co.,
    651 F.2d 1030 (5th Cir. 1981) ........................................ 10, 11

## I.   **PRELIMINARY STATEMENT**

Plaintiffs Brandon Bueche, William Patterson, Kenneth Lo, and Gordon and Mary Lou

Ellis, by and through their undersigned attorneys, hereby submit this memorandum of law in

support of their motion for an Order certifying this action as a class action, certifying Plaintiffs as

class representatives, and certifying the undersigned counsel as class counsel.  Plaintiffs seek to

certify and represent a class consisting of all persons and entities who purchased or otherwise

acquired Amedisys, Inc. ("Amedisys") common stock, during the period March 1, 2001, through

June 13, 2001,  inclusive  (the "Class Period") who were damaged (the "Class") by Defendants'

alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the

"Exchange Act").  Excluded from the proposed Class are all Defendants, including the Company

and of those entities' subsidiaries, affiliates, directors, senior officers, successors or assigned and

any of the heirs or members of the immediate families of the Defendants.  The proposed Class

satisfies the numerosity, commonality, typicality and adequacy of representation requirements of

Fed. R. Civ. P. 23(a)(1)-(4) and the predominance and superiority requirements of Fed. R. Civ. P.

23(b)(3).

## II.   **PROCEDURAL HISTORY**

Pending before this Court is a consolidated class action lawsuit brought by purchasers of

the common stock of Amedisys, Inc. ("Amedisys"or "Company"), alleging violations of the

Securities Exchange Act of 1934 (the "Exchange Act") against Amedisys and certain of its

directors and officers ("Defendants").

On August 21, 2001, plaintiff Frances Unger filed a complaint on behalf of herself and all

other persons who purchased the common stock of Amedisys during the period March 1, 2001

through and including June 13, 2001 (the "Class Period"), to recover damages caused by

Defendants' violation of the federal securities laws.[1]  Pursuant to Section 21D(a)(3) of the

Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 (the

"PSLRA"), plaintiff caused notice to be published over the PR Newswire on August 22, 2001,

advising members of the proposed class of their right to move the Court to serve as lead plaintiff

no later than sixty (60) days from the issuance of the notice.  On October 4, 2001, plaintiff

Brandon Joseph Bueche filed a complaint on behalf of himself and all other persons who

purchased the common stock of Amedisys during the Class Period, to recover damages caused by

Defendants' violation of the federal securities laws.[2]  Pursuant to this Court's Order, dated

October 12, 2001, the second action filed against Amedisys, Bueche v. Amedisys, Inc., et al.,

Case No. CV 01-838-D-M2, was consolidated with the first filed action, Unger v. Amedisys,

Inc., et al., Case No. CV 01-703-D-M1.

Pursuant to the PSLRA, on October 22, 2001, plaintiffs Brandon Bueche, William

Patterson, Kenneth Lo, and Gordon and Mary Lou Ellis, Movants herein, timely moved this

Court to be appointed Lead Plaintiffs in the consolidated action and to approve their selection of

lead and liaison counsel.

On October 29, 2001, Defendants moved to dismiss the class action complaints filed by

plaintiffs Frances Unger and Brandon Joseph Bueche pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.

---

[1] Frances Unger v. Amedisys, Inc., et al., Case No. CV 01-703-D-M1.

[2] Brandon Joseph Bueche v. Amedisys, Inc., et al., Case No. CV 01-838-D-M2.

On November 5, 2001, plaintiff Frances Unger filed a notice of withdrawal respectfully withdrawing her motion to be appointed lead plaintiff and approving her selection of lead and liaison counsel. On November 7, 2001, the Court entered an order granting Frances Unger's notice of withdrawal. Although the competing motion for appointment as lead plaintiff has been withdrawn and Movants are presumptively the "most adequate plaintiffs," to date no order has been entered by this Court appointing Movants as lead plaintiffs or approving their selection of co-lead and liaison counsel. See Section 21D(a)(3)(B)(iii) of the Exchange Act. Plaintiffs file this motion in compliance with Local Civil Rule 23.1(B).

## III.    STATEMENT OF FACTS

Amedisys purports to offer home health care, nursing, home infusion therapy and ambulatory surgery services. Approximately 90 percent of the Company's revenue is derived from Medicare. On October 1, 2000, Medicare began implementation of its Prospective Payment System, under which Medicare arrives at an estimate of the total amount it will likely pay Amedisys for services rendered to patients. Under the System, Medicare pays a substantial portion of the total estimated amount up front, then pays the remainder upon the completion of the particular treatment episode. In cases where the total amount ultimately owed by Medicare is less than the amount of the up-front payment provided to Amedisys, the amount of the over-payment is refunded to Medicare.[3]

---

[3]    See Defendants' Memorandum In Support Of Motion To Dismiss, p 2.

On March 1, 2001, Amedisys issued a press release over the *PR Newswire* announcing its

financial results for the quarter and year ended December 31, 2000. Compl. ¶ 26.[4] Defendant

Borne was quoted as stating:

> We are very pleased to report an impressive turnaround in
> operating profitability during the fourth quarter of 2000. . . . The
> implementation of Medicare's new Prospective Payment System
> (PPS) on October 1, 2000, combined with management's
> successful efforts to position Amedisys as a cost-efficient provider
> of home health nursing services, allowed the Company to reduce
> its net loss from continuing operations by more than 70% for the
> year ended December 31, 2000.

Compl. ¶ 26.

The Company further stated:

> The Company reported net income, before special items, of $3.1
> million, or *$0.59* per basic share (including an income tax benefit
> of $659,000), for the three months ended December 31, 2000, on
> revenues of approximately $23.5 million and a net loss, before
> special items of ($1.1 million), or ($0.34) per share, in the fourth
> quarter of 1999. The significant improvement in operating
> profitability was primarily attributable to the implementation of
> PPS, effective October 1, 2000.
>
> Total net income for the three months ended December 31, 2000,
> including an extraordinary gain of $5.8 million (net of taxes)
> related to the early extinguishment of debt and income of $816,000
> from discontinued operations, approximated $9.8 million, or $1.83
> per basic share. This compares with a total net loss of ($915,000),
> or ($0.29) per share, including $159,000 in net income from
> discontinued operation in the fourth quarter of 1999.
>
> Revenues totaled approximately $90.8 million and the Company
> reported a net loss, before special items of ($1.1 million), or
> ($0.25) per share (including an income tax benefit of $659,000),
> for the twelve months ended December 31, 2000. The Company

---

[4]    References taking the form "Compl. ¶__" are to the complaint in *Brandon Joseph Bueche v. Amedisys, Inc., et al.*, No. CV 01-838-D-2 (M.D. LA. filed Oct. 4, 2001).

> reported a net loss, before special items of ($4.1 million), or
> ($1.32) per share (including an income tax benefit of $3.3 million),
> on revenues of approximately $97.4 million, in the year ended
> December 31, 1999. The reduction in net loss for the most recent
> year was primarily attributable to an approximate $3.9 million
> improvement in profitability in the fourth quarter of 2000 (when
> compared with the prior-year period) and greater operating
> efficiencies, partially offset by a reduction in the Company's
> income tax benefit of $2.6 million.

Compl. ¶ 26.

On March 19, 2001, the Company filed its Form 10-K for the quarter and year ended

December 31, 2000, reporting substantially the same financial information reported in the March

1, 2000 press release. Compl. ¶ 27. Defendants Borne and Joffrion signed the Company's Form

10-K filed with the SEC. Compl. ¶ 27.

On May 1, 2001, Amedisys issued a press release over the PR Newswire announcing its

financial results for the first quarter of 2001, ending March 31, 2001. Compl. ¶ 28. The

Company reported, in relevant part:

> The Company reported net income from continuing operations,
> before income taxes of $2.7 million for the three months ended
> March 31, 2001. Net of income taxes, the company reported
> income from continuing operation of $2.4 million, of $0.32 per
> diluted hare, for the first quarter of 2001, on revenues of
> approximately $26.2 million. These results compared with
> revenues of approximately $23.4 million and a net loss, before
> special items of $1.4 million, or $0.42 per share, in the first quarter
> of 2000. The significant improvement in operating profitability
> was primarily attributable to the implementation of Medicare's
> Prospective Payment System in the fourth quarter of 2000.

Compl. ¶ 28.

Defendant Borne was quoted as stating:

> We are pleased to report that the earnings turnaround that followed
> the implementation of Medicare's new Prospective Payment
> System in October 2000 is continuing. . . . A revenue gain of 12%
> in the first quarter reflected growth in patient admission,
> contributions from acquired home nursing agencies, and changes in
> the Medicare payment system. Operating income for the quarter
> totaled $3.2 million, or 12% of net revenue, as compared with an
> operating loss of ($816,000) for the same quarter of last year.

Compl. ¶ 28.

On May 14, 2001, the Company filed with the SEC its Form 10-Q for the first quarter of

2001, ended March 31, 2000, reporting substantially the same financial information reported in

the May 1, 2001 press release. Compl. ¶ 29. Defendant Joffrion signed the Company's Form 10-

Q filed with the SEC. Compl. ¶ 29.

The information provided by the Company referenced above was materially false and

misleading and omitted material facts when made in that Defendants knew, or recklessly

disregarded that the Company's reported revenue and earnings were attributable to the improper

recognition of revenue in violation of Generally Accepted Accounting Principles ("GAAP") and

SEC rules. Compl. ¶ 30. During the Class Period, the Company had knowledge, or recklessly

disregarded, that these statements were false and misleading because the Company lacked a

system of internal controls with which to properly ensure that the reported net services revenue,

earnings, and net income were materially correct. Compl. ¶ 30.

In connection with implementing the Medicare Prospective Payment System ("PPS") in

October 1, 2001, Amedisys improperly recognized net services revenue for the fourth quarter of

2000 and the first quarter of 2001 in violation of GAAP. Compl. ¶ 31. Indeed, the Company

materially overstated net services revenue by approximately $6.6 million. Compl. ¶ 31. As a

result of the restatement, the Company was actually unprofitable, even though it had previously reported strong financial results.  Compl. ¶ 31.

Defendants falsely assured investors that the Medicare PPS provided positive revenue and earnings for the Company.  Compl. ¶ 32.  In fact, had defendants properly applied PPS, Amedisys would have reported significantly reduced revenues and losses for each of the fourth quarter of 2000 and first quarter of 2001.  Compl. ¶ 32.

|  | 4th Quarter 2000 | | 1st Quarter 2001 | |
|---|---|---|---|---|
|  | **As Reported** | **As Restated** | **As Reported** | **As Restated** |
| Revenues | $23.5 M | $19.4 M | $23.4 M | $22.2M |
| Net Income | $3.1 M | ($130,000) | $2.4 M | ($409,000) |

Compl. ¶ 32.

On June 13, 2001, Amedisys issued a press release announcing that it overstated net services revenue for the quarters ended December 31, 2000 and March 31, 2001.  Compl. ¶ 33  The Company reported, in relevant part:

> The implementation of the Prospective Payment System ("PPS") on October 1, 2000 made significant changes to the reimbursement methodology for home health nursing companies, necessitating changes to systems processing provider and patient-specific claims for both the intermediary and the individual home health provider. The Company noted certain discrepancies in these systems which had the effect of overstating net services revenues.  At this time, the Company is continuing to verify all the data to determine the overall impact upon previously reported revenues.  While the Company has not yet determined the exact amount, it believes the resulting negative adjustment to net service revenue could range between $4 and $7 million, to be allocated between the fourth quarter of 2000 and the first quarter of 2001.  The Company expects to report actual adjustments as soon as possible.

Compl.  ¶ 33.

As a result of this revelation, the Company's stock price plummeted almost 60 percent to close at $4.10 per share on June 13, 2001, far from its closing price of $9.92 per share on June 12, 2001. Compl. ¶¶ 4, 34.

On July 17, 2001, Amedisys issued a press release detailing the impact of the previously announced false financial results. Compl. ¶ 35. The Company reported, in relevant part:

> The Company, with the assistance of the Company's external auditing firm, has completed a review of all Medicare patients served and has quantified the impact of the net service revenue overstatement upon its previously reported operating results. The decrease in revenue for the six months ended March 31, 2001 totaled approximately $6.6 million and will be partially offset by a reversal of $900,000 in incentive compensation, resulting in a net negative adjustment to operating income of $5.7 million. Of this $5.7 million, $2.6 million is attributable to the fourth quarter of 2000 and $1.3 million is attributable to the first quarter of 2001.
>
> After taking the restatement into account, Amedisys will report an operating loss before income taxes of special items of $130,000 on revenues of approximately $19.4 million for the quarter ended March 31, 2000. For the quarter ended March 31, 2001, the Company will report an operating loss before income taxes and special items of $409,000 on revenues of approximately $22.2 million. For the twelve months ended December 31, 2000, the Company will report an operating loss before income taxes and special items of $4.3 million on revenues of approximately $88.2 million.

Compl. ¶ 35.

The Individual Defendants caused Amedisys to falsify its reported financial results through improper revenue recognition based on prematurely booking of revenues on certain contracts in violation of GAAP and SEC rules. Compl. ¶ 37.

Contrary to Defendants' representations and contrary to GAAP and SEC rules, during the Class Period, Amedisys improperly recognized revenue, according to the information Amedisys had at the time the revenue was recognized, the Company had not earned. Compl. ¶ 39. Due to these accounting improprieties, the Company presented its financial results and statements in a manner that violated GAAP, and fundamental accounting principles.
Compl. ¶ 39.

Further, the undisclosed adverse information concealed by defendants during the Class Period is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed. Compl. ¶ 40.

Defendants Borne, Graham and Joffrion caused Amedisys to engage in irregular accounting practices, and in turn caused Amedisys to report artificially inflated financial results. Compl. ¶ 41. The Individual Defendants knowingly, or in reckless disregard for the truth, caused Amedisys to engage in accounting irregularities. Compl. ¶ 41.

Amedisys, acting through its officers, Borne, Graham and Joffrion, knowingly or in reckless disregard for the truth, issued to the investing public financial statements, which contained materially false and misleading statements and artificially inflated net services revenue. Each Individual Defendant had knowledge of Amedisys' problems and was motivated to conceal such problems. Each Individual Defendant sought to demonstrate that he could lead the Company successfully and generate the growth expected by the market. Compl. ¶ 42. As a result of defendants' materially false and misleading statements and irregular accounting activities the entire Class acquired Amedisys common stock at inflated prices.

## IV.   ARGUMENT

### A.   THE PROPOSED CLASS ACTION SATISFIES RULE 23

#### 1.   The Standards Of Review On A Motion For Class Certification

Rule 23(a) sets forth four elements that must be met before a class may be certified:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Here, each requirement of Rule 23(a) is met.[5]

### 2. The Class Is So Numerous That Joinder Of All Members Is Impracticable

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is

impracticable. Republic Nat'l Bank v. Denton & Anderson Co., 68 F.R.D. 208, 213 (N.D. Tex.

1975). "[I]mpracticality . . . does not mean impossibility but merely difficulty or inconvenience."

Id. A plaintiff need not allege the exact number and identity of the Class members, but rather

must merely establish that joinder is impracticable through "some evidence or reasonable

estimate of the number of purported class members." See Zeidman v. J. Ray McDermott & Co.,

651 F.2d 1030, 1038 (5th Cir. 1981) ("The proper focus . . . is not on numbers alone, but on

whether joinder of all members is practicable in view of the numerosity of the class and all other

relevant factors.") (quoting Philips v. Joint Legislative Committee on Performance &

Expenditure Review, 637 F.2d 1014, 1022 (5th Cir. 1981)).

Numerosity cannot be disputed here. During the Class Period, Amedisys had

approximately 5,655,000 shares of common stock outstanding. Compl. ¶19. The sheer number

of shareholders here makes joinder of all Class members impracticable. See Greenwald v.

Integrated Energy, Inc., 102 F.R.D. 65, 68 (S.D. Tex. 1984) (numerosity requirement is satisfied

where investors of the company traded millions of shares during the Class Period).[6]  Moreover,

---

[5] When determining whether to certify a class, courts have uniformly held that an inquiry into the merits of a plaintiff's claims is inappropriate. Rather, the focus is simply whether the prerequisites of Rule 23 have been met. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974) (quoting Miller v. Mackey Int'l Inc., 452 F. 2d 424, 427-28 (5th Cir. 1971)) ("[I]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."); Keasler v. Natural Gas Pipeline Co., 84 F.R.D. 364, 365 (E.D. Tex. 1979).

[6] Courts throughout this Circuit and District have routinely certified classes in actions where the number of potential class members are far less than the potential number here. See, e.g,. Boykin v. Georgia-Pacific Corp., 706 F.2d 1384, 1386 (5th Cir. 1983), cert. denied, 465 U.S. 1006 (1984) (class of 317 individuals sufficient); Cary v. Greyhound Bus Co., 500 F.2d 1372, 1379-81 (5th Cir. 1974) (class of over 40 potential class members sufficient); accord H. Newberg and A. Conte, On

in <u>Zeidman</u>, 651 F.2d at 1039, the Court of Appeals expressly approved of the presumption that "<u>any</u> class composed of the sellers of a nationally traded security during a period in which hundreds of thousands or even millions of shares of the security were traded must necessarily be 'so numerous that joinder of all members is impracticable.'" Accordingly, the Court concluded that "the prerequisite expressed in Rule 23(a)(1) is generally assumed to have been met in class action suits involving nationally traded securities." <u>Id.</u> at 1039. Since Amedisys common stock was nationally traded on the OTC Bulletin Board during the Class Period , under <u>Zeidman</u>, numerosity should be presumed. Compl. ¶ 10.

Furthermore, since Amedisys is actively traded on a national securities market, holders of Amedisys securities likely reside in many states. <u>Id.</u> This geographical diversity among potential claimants weighs heavily in favor of class treatment. <u>See, e.g.</u>, <u>Mertz v. Harris</u>, 497 F. Supp. 1134, 1138 (S.D. Tex. 1980). Joining the thousands of Class members who reside in different states would be extremely burdensome and expensive, and thus impracticable. Consequently, the "numerosity" element of Rule 23(a) is easily satisfied here.

### 3.    <u>Common Questions Of Law And Fact Exist</u>

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "The threshold of 'commonality' is not high." <u>Jenkins v. Raymark Indus., Inc.</u>, 782 F. 2d 468, 472 (5th Cir. 1986); <u>Durrett v. John Deere Co.</u>, 150 F.R.D. 555, 558 (N.D. Tex. 1993). Rule 23(a)(2) does not require complete identity of legal claims among the Class members, but only that there be "at least one issue whose resolution will affect all or a significant number of the putative class members." <u>Durrett</u>, 150 F.R.D. at 557-58 (quoting <u>Stewart v. Winter</u>, 669 F.2d 328, 335 (5th Cir. 1982)). "[A] court will normally find commonality where a question of law refers to

---

Class Actions, § 3.05 at p.3-25 (3rd ed. 1992) ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23 (a)(1) on that fact alone.").

standardized conduct by defendants towards members of the proposed class." In re AmeriFirst
Sec. Litig., 139 F.R.D. 423, 428 (S.D. Fla. 1991) .[7]

Here, all claims against the Defendants arise out of the same set of operative facts and are
based on common legal theories. Compl. ¶ 20. The Plaintiffs allege that Defendants made
uniform misrepresentations to the investing public in, inter alia, Amedisys's filings with the SEC
and in its press releases. Defendants' material misrepresentations and omissions artificially
inflated the market price of Amedisys's securities, thereby injuring in exactly the same way each
Class member who purchased those securities. Thus, questions of fact and law common to all
members of the proposed Class include: (a) whether the federal securities laws were violated by
Defendants' acts; (b) whether statements made by Defendants to the investing public during the
Class Period misrepresented or failed to disclose material facts about the business, operations,
prospects and financial condition of Amedisys; (c) whether Defendants participated in and
pursued the common course of conduct alleged in the Complaint; (d) whether Defendants acted
willfully, knowingly, or recklessly in omitting and/or misrepresenting material facts; (e) whether
the market price of Amedisys's securities was artificially inflated during the Class Period due to
the alleged material omissions and/or misrepresentations; and (f) to what extent the members of
the Class have sustained damages, and the proper measure of such damages.

Proving the existence and nature of material omissions and misleading statements by
Defendants are the most important issues in a securities fraud case and as such, will be common
to all members of the Class in this action. Absent Class members necessarily would have to
prove identical facts and answer identical legal questions if they pursued their claims
individually. Accordingly, the Lead Plaintiffs satisfy Rule 23(a)(2).

---

[7] Accord Dura-Bilt Corp. v. Chase Manhattan Corp., 89 F.R.D. 87, 93 (S.D.N.Y. 1981)
("existence, materiality, and character of the alleged misrepresentations and omissions" constitute
"common questions").

### 4.    Plaintiffs' Claims Are Typical Of Those Of The Class

Rule 23(a)(3) requires that the claims and defenses of the representative plaintiff be typical of the claims and defenses of the Class. The test for typicality, like commonality, is not demanding. Shipes v. Trinity Indus., 987 F.2d 311, 316 (5th Cir. 1993) cert. denied, 510 U.S. 991 (1993); Durrett, 150 F.R.D. at 558; see Forbush v. J.C. Penny Co., 994 F.2d 1101, 1106 (5th Cir. 1993).

"Typicality" does not mean that the claims of the representative parties must be identical with those of the absent class members. See Philips, 637 F.2d at 1024. Rather, the courts of this District have noted that typicality is satisfied where the representative plaintiffs' claims arise out of the same event or course of conduct as the other class members' claims and are based on the same legal theory. See In re First Republicbank Secs., [1989 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 94, 554, at 93, 546 (N.D. Aug. 1, Tex.1989) ("Typicality refers to the nature of the claims and not to the specific facts from which the claims arose or relief is sought.") (citations omitted); Kalodner v. Michaels Stores, Inc., 172 F.R.D. 200, 204-05 (N.D.Tex. 1997) ("[h]owever, claims need not be identical. Courts routinely find that similar legal theories satisfy this requirement even where significant factual distinctions are present") (Internal citations omitted); see also Krogman et al. v. Sterritt et al., 202 F.R.D. 467, 472 (N.D. Tex. 2001).

Here, the plaintiffs stand in precisely the same position as the other Class members, since they purchased Amedisys common stock during the Class Period at artificially inflated prices, and were injured as a result of Defendants' misrepresentations and omissions in publicly disseminated information. Like other Class members, Plaintiffs purchased Amedisys securities at those inflated prices without knowledge of material facts concerning the true financial and operating condition of Amedisys. The proof that the Plaintiffs will offer at trial and the legal theories advanced are basic and essential to the claims of all class members. Accordingly, Plaintiffs' claims are typical of those of the Class.

5.    **Plaintiffs Will Fairly And Adequately
Protect The Interests Of The Class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The standards of Rule 23(a)(4) are met if: (1) the named plaintiffs' interests are not antagonistic to other members of the class; and (2) the named plaintiff, through his attorney, is prepared to prosecute the action vigorously. In re First Republicbank Secs., (CCH) ¶ 94,554 at 93,548. The Fifth Circuit recently noted that, pursuant to the PSLRA, standard adequacy threshold was raised so that, "securities class actions be managed by active, able class representatives who are informed and can demonstrate they are directing the litigation." Berger v. Compaq Computer Corp., 257 F.2d 475, 483 (5th Cir. 2001).

Both prongs of the adequacy test are met here. No actual or perceived conflict of interest exists between the named plaintiffs as purchasers of Amedisys securities and the absent members of the Class. As the Fifth Circuit stated in In re Corrugated Container Antitrust Litig., 643 F.2d 195, 208 (5th Cir. 1981), cert. denied, 456 U.S. 998 (1982):

> [S]o long as all class members are united in asserting a common
> right, such as achieving the maximum possible recovery for the
> class, the class interests are not antagonistic for representation
> purposes.

(Citation omitted).

Nothing suggests that plaintiffs' interests are in any way antagonistic to those of the absent Class members. In fact, plaintiffs are victims of the same conduct as all other Class members and are committed to prosecuting claims on behalf of all those similarly situated. Thus, in order to further their own interests, plaintiffs will necessarily have to advance the interests of all Class members. See, e.g., In re First Republicbank Secs., (CCH) ¶ 94,554 at 93,548 (deciding adequacy issue and finding class representatives' interests co-extensive with interests of the class). In fact, plaintiffs meet the burden of being active and able class representatives by already indicating their interest in pursuing this action through their submission of lead plaintiff

papers and completed certification forms, each of which indicate a willingness to provide testimony at trial.

Here, there can be no doubt that Plaintiffs' counsel will provide vigorous and adequate representation for the Class. As is demonstrated by the firm resumes of Plaintiffs' Counsel (attached as Exhs A, B and C to the Wickersham Declaration), Plaintiffs are represented by counsel who have outstanding records of accomplishment in the prosecution of securities and other class actions. Thus, both prongs of the adequacy test are satisfied as are all other elements of Rule 23(a).

### B.    PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B)(3)

To certify this case as a class action, the Court must find that the action, in addition to meeting the prerequisites of Rule 23(a), satisfies at least one of the three conditions of Rule 23(b). Rule 23(b)(3) provides, in relevant part:

> (b)    An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . .
>
> (3)    the court finds that the questions of law common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Here, Plaintiffs satisfy both the predominance and superiority requirements of Rule 23(b)(3).

### 1.    Common Questions Of Law And Fact Predominate

Rule 23(b)(3) does not require that <u>all</u> questions of law or fact be common; it only requires that the common questions predominate over individual questions. <u>Amchem Prods., Inc.</u> <u>v. Windsor</u>, 521 U.S. 591, 623, 117 S. Ct. 2231, 2250 (1997) (emphasis added) ("Predominance is a test readily met in certain cases alleging consumer or <u>securities fraud</u> or violations of the antitrust laws."); <u>Mullen v. Treasure Chest Casino, LLC et al.</u>, 186 F.3d 620, 626-27 (5th Cir. 1999).

"Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the Class, common questions are held to predominate over individual questions." Dura-Bilt, 89 F.R.D. at 93; Feinberg v. Hibernia Corp., 1992 U.S. Dist. LEXIS 10872 at *12 (E.D. Lou. July 14, 1992) (Ex. D).  In the case at bar, Defendants' liability turns upon issues which are common to the Class, that is, did Defendants make materially false and misleading statements with the requisite scienter through a uniform course of conduct to the detriment of all Class members.  Simply, if Defendants are liable for this conduct, they are liable to all Class members in a like manner.

Moreover, no significant, let alone predominant, individual issues exist in this case.  In particular, there are no individual issues of reliance that can be said to preclude class certification.  Under controlling Supreme Court precedent, the reliance element of plaintiffs' securities fraud claims is presumed.  See Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54 (1972) (with respect to nondisclosures, a plaintiff need not prove individual reliance because proof of the materiality of the concealed fact represents sufficient evidence of a causal connection between a defendant's conduct and plaintiff's injury to satisfy any reliance requirement under Section 10(b) and Rule 10b-5); accord Basic Inc. v. Levinson, 485 U.S. 224, 241-47 (1988) (presumption of reliance with respect to material misstatements); Fine v. American Solar King Corp., 919 F.2d 290, 299 (5th Cir. 1990).[8]

In sum, where, as here, a continuous course of conduct on the part of Defendants is alleged, the issues of law and fact which flow from that activity clearly predominate over any

---

[8] Likewise, courts have repeatedly rejected the argument that any difference among class members concerning individual damage issues preclude a determination that common issues predominate.  See Basic, 485 U.S. at 242; First Republicbank, (CCH) ¶ 94,554, at 95,543 n.14. Individual damages in a securities fraud case can readily be determined by use of a simple formula applicable to all Class members.  Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975) cert. denied 429 U.S. 816 (1976).

individual issues. In such circumstances, a class action is not only appropriate, but mandated by
Rule 23.

### 2.    A Class Action Is Superior To Other Available Methods Of Adjudication

Rule 23(b)(3) also requires that the Court determine whether a class action is superior to
other possible methods of fairly and efficiently resolving this controversy. Plaintiffs are
confident that the class action device is not only superior to other alternatives for adjudicating the
claims presented by the instant action, but is the only practical method of obtaining the fair and
efficient disposition of these claims.

Violations of the federal securities laws, such as those alleged here, inflict economic
injury on large numbers of geographically dispersed persons. As a result, the cost of pursuing
individual litigation against multiple adversaries is frequently significantly greater than the
damages for each individual class member. Thus, the alternatives to a class action are either no
recourse for hundreds or thousands of securities holders, or a multiplicity of scattered suits
resulting in the inefficient administration of justice. See In re First Republicbank Secs., (CCH) ¶
94, 554, at 93, 549. This is precisely "the evil that Rule 23 was designed to prevent." Califano
v. Yamasaki, 442 U.S. 682, 690 (1979).

As Judge Sanders has remarked, "[a]ny administrative difficulties in handling this class
action are preferable to duplicating judicial resources in several individual lawsuits and denying
access to the courts for class members." In re First Republicbank Secs, (CCH) ¶ 94,554, at
93,549. This action clearly lies in the mainstream of class actions alleging violations of the
securities laws which satisfy the "superiority" requirement of Rule 23(b)(3). See Herbst v.
International Tel. & Tel. Corp., 495 F.2d 1308, 1323 (2d Cir. 1974); In re Gulf Oil/Cities Serv.
Tender Offer Litig., 112 F.R.D. 383, 389 (S.D.N.Y. 1986).

Moreover, the complexities likely to be encountered in the management of class litigation
have been held to be insufficient to defeat class certification in numerous actions

indistinguishable from this one.   See Mersay v. First Republic Corp., 43 F.R.D. 465, 467-69

(S.D.N.Y. 1968).  Such complexities will be no greater here.  The proposed Class is clearly

defined.  Compl. ¶ 1.  Few, if any, difficulties will arise in identifying Class members and in

providing notice to them.  Furthermore, counsel herein have years of experience in managing

class actions.  This case presents no novel problems.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully submit that this Court should certify this action as a class action, certify Plaintiffs as class representatives, and certify counsel as class counsel.

DATED: November 19, 2001

Respectfully submitted,

McKEITHEN, McKEITHEN & BOHMAN

Marjorie A. McKeithen T/A (#21767)
Martin S. Bohman (#22005)
10771 Perkins Road, First Floor
Baton Rouge, Louisiana 70810
(225) 766-6500

**(Proposed Plaintiffs' Liaison Counsel)**

STULL, STULL & BRODY
Jules Brody
Aaron L. Brody
Brian K. Stahl
William W. Wickersham
6 East 45th Street
New York, NY 10017
(212) 687-7230

KELLER ROHRBACK L.L.P.
Lynn Lincoln Sarko
Juli E. Farris
Elizabeth A. Leland
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900

**(Proposed Plaintiffs' Counsel)**

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that a true and correct copy of this instrument has been forwarded to all counsel of record, via certified mail, return receipt requested, and/or via facsimile, and/or via U.S. Mail on this _____ day of November, 2001.

MARJORIE A. McKEITHEN

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

---

|  |  |
|---|---|
| FRANCES UNGER, Individually and On Behalf of : All Others Similarly Situated, : : | |
| Plaintiff, : : | Case No. 01-CV-703 Judge James J. Brady |
| v. : : | |
| AMEDISYS, INC., WILLIAM F. BORNE, : LARRY GRAHAM and JOHN M. JOFFRION, : : | |
| Defendants. : : | |

---

### DECLARATION OF WILLIAM W. WICKERSHAM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPROVAL OF SELECTION OF COUNSEL

I, William W. Wickersham, hereby declare:

1.  I am an attorney at the law firm of Stull, Stull & Brody, one of Plaintiffs' counsel in the consolidated action entitled <u>Frances Unger v. Amedisys, Inc., et al.</u>, Case No. CV 01-703. I submit this Declaration in support of Plaintiffs' motion for class certification, and approval of the selection of counsel.

2.  Attached hereto as Exhibit A is a true and correct copy of Stull, Stull & Brody's firm biography.

4.  Attached hereto as Exhibit B is a true and correct copy of Keller Rohrback L.L.P.'s complex litigation department biography.

5.  Attached hereto as Exhibit C is a true and correct copy of McKeithen, McKeithen

& Bohman's firm biography.

6. Attached hereto as Exhibit D is a true and correct copy of <u>Feinberg v. Hibernia Corp.</u>, 1992 U.S. Dist. LEXIS 10872 (E.D. La. 1992).

Signed under the penalties of perjury this 16th day of November, 2001.

William W. Wickersham